16-1689-cv
Fernandez v. Zoni Language Ctrs., Inc.

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2016

(Argued: December 9, 2016    Decided: May 26, 2017)

Docket No. 16-1689-cv

ZHARA FERNANDEZ, TANYA CHAMBERS, KENYA BROWN, AMY CHU, JOHN VOLPE, ANDREW BULLINGTON, individually and on behalf of others similarly situated,

*Plaintiffs-Appellants*,

—v.—

ZONI LANGUAGE CENTERS, INC. (D/B/A ZONI LANGUAGE CENTERS), ZONI LANGUAGE CENTERS-FLUSHING LLC (D/B/A ZONI LANGUAGE CENTERS), and ZOILO C. NIETO,

*Defendants-Appellees*.

Before:

CALABRESI, RAGGI, LYNCH, *Circuit Judges.*

On appeal from a judgment entered in the United States District Court for

the Southern District of New York (Castel, *J.*), dismissing minimum wage and

overtime claims under the Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. §§ 201 *et seq.*  Plaintiffs, who are employed by defendants as English language teachers, argue that it was error to afford defendants the FLSA's exemption for bona fide professional employees, *see id.* § 213(a)(1), because defendants are not "educational establishment[s]," as required by law, *see* 29 C.F.R. §§ 541.303(a), 541.204(b).

AFFIRMED.

---

JOSHUA S. ANDROPHY, Michael Faillace & Associates, P.C., New York, New York, *for Plaintiffs-Appellants*.

STEPHEN I. LATZMAN, Esq., New York, New York, *for Defendants-Appellees*.

---

REENA RAGGI, *Circuit Judge*:

Plaintiffs Zhara Fernandez, Tanya Chambers, Kenya Brown, Amy Chu, John Volpe, and Andrew Bullington are or were employed to teach English as a second language by defendants, two Zoni Language Centers, one in Manhattan and the other in Queens, as well as the centers' president, Zoilo C. Nieto (collectively, the "Zoni Centers").  On behalf of themselves and others similarly situated, plaintiffs filed this putative class and collective action in the United States District Court for the Southern District of New York (P. Kevin Castel,

2

*Judge*), alleging that defendants violated the Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law, *see* N.Y. Lab. Law §§ 650 *et seq.*, in failing to pay them both the statutory minimum wage for hours worked out of the classroom and statutory overtime when plaintiffs' classroom and out-of-classroom work exceeded 40 hours per week. On this appeal, plaintiffs challenge the district court's dismissal of their FLSA claims for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6); *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066, 2016 WL 2903274 (S.D.N.Y. May 18, 2016). They argue that defendants were not entitled to the exemption from the FLSA's minimum wage and overtime requirements applicable to teachers working as bona fide professionals, *see* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.303(a), because defendants are not "educational establishment[s]," as required for that exemption to apply, *see* 29 C.F.R. §§ 541.303(a), 541.204(b).

For the reasons stated herein, we conclude that the Zoni Centers are "educational establishment[s]" under 29 C.F.R. § 541.204(b) and, accordingly, we affirm the judgment in defendants' favor.[1]

---

[1] Upon dismissing plaintiffs' federal claims on the merits, the district court declined to exercise supplemental jurisdiction over related state law claims and, instead, dismissed these claims without prejudice to refiling in state court. *See*

3

## I. Background

### A. Defendants Zoni Centers

Defendants Zoni Centers are part of a chain of private, for-profit facilities offering English language instruction. Both Zoni Centers are licensed by the New York State Department of Education as English-as-a-Second-Language schools, as required by state law. *See* N.Y. Educ. Law § 5001(1), (1)(b), (4)(f)(4). They are also accredited by the Accrediting Council for Continuing Education and Training, one of ten institutions deemed "Nationally Recognized Accrediting Agencies" by the United States Department of Education. *See Accreditation– Agency List*, U.S. Dep't of Educ., http://ope.ed.gov/accreditation/Agencies.aspx (last visited May 23, 2017).

---

*Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at \*12–13. Because plaintiffs raised no challenge to that decision but, rather, urged it, s*ee* Pl's Opp. to Mot. to Dismiss at 16 n.3, *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066, (S.D.N.Y. Dec. 11, 2015), ECF No. 21 ("Plaintiffs acknowledge that if the Court dismisses Plaintiffs['] federal claims, the Court should decline to continue to exercise supplemental jurisdiction over the state law claims of the Complaint."), we affirm this part of the judgment without further discussion, *see Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016) (declining to consider any challenge to dismissal of claims where "affirmatively waived").

B.    Plaintiffs' Employment at Defendants' Zoni Centers

Each of the named plaintiffs is or was employed as an English-language instructor at one of the two defendant Zoni Centers. As such, they not only teach English language classes held at the Zoni Centers, but also devote time outside of class to creating lesson plans consistent with Zoni's curriculum standards, grading students' midterm and final examinations, and attending professional development meetings. Like teachers at primary and secondary schools, plaintiffs receive no extra compensation for these outside-the-classroom activities. But unlike primary and secondary school teachers, who generally receive a fixed salary for the totality of their work, plaintiffs are paid at an hourly rate—here, $16 to $17 per hour—calculated by reference only to their classroom teaching time. Plaintiffs allege that their preparation and grading of student work represents a material part of their worktime and should be compensated in addition to classroom time.[2]

---

[2] Various allegations in the complaint can be summarized as asserting that plaintiffs on average were paid for approximately between 25 and 35 hours of in-class time each week, but that they spent on average between 8 and 10 uncompensated hours per week preparing for class. Thus, the complaint asserts that something on the order of 15–30% of plaintiffs' work time was uncompensated, depending on the plaintiff and the particular week (since plaintiffs' hours varied depending on the curriculum and exam schedules).

C.     Procedural History

Plaintiffs filed this action on August 3, 2015, seeking compensation under the FLSA and applicable state law for (1) unpaid minimum wages for their out-of-classroom work, *see* 29 U.S.C. § 206(a); and (2) overtime pay for any weeks in which a teacher's total work time inside and outside the classroom exceeded 40 hours, *see id.* § 207(a).  The Zoni Centers moved to dismiss the complaint, arguing that plaintiffs, as "teachers" at an "educational establishment," 29 C.F.R. § 541.303(a), are subject to the FLSA's exemption from minimum wage and overtime requirements for persons "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1).  In opposing the motion, plaintiffs conceded that they were "teachers" under the applicable regulation, but disputed the Zoni Centers' status as an "educational establishment."

On May 18, 2016, the district court concluded, based on its review of eight factors, that the Zoni Centers were properly characterized as "other educational institution[s]" within the meaning of the Department of Labor's ("DOL's")

exemptive regulations.[3] Accordingly, it dismissed plaintiffs' FLSA claims on the merits and declined to exercise supplemental jurisdiction over their state-law claims. A final judgment of dismissal was entered the same day, from which plaintiffs now appeal.

---

[3] Citing two opinions from outside this circuit, *see Astor v. United States*, 79 Fed. Cl. 303, 316–17 (2007); *Escobedo v. Constr. Laborers' Educ. Training & Apprenticeship Fund*, No. 11-cv-3653, 2012 WL 4838880, at *4–6 (D. Minn. Oct. 11, 2012), as well as the applicable DOL regulation, 29 C.F.R. § 541.204(b), the district court identified the following eight factors as relevant to determining whether a facility qualifies as an "other educational institution":

(1) the title of employees;
(2) the certifications required of [employees];
(3) the formality of courses;
(4) the granting of certificates or degrees;
(5) the [institution's] charter;
(6) the [employees'] involvement in organizing, communicating and delivering curriculum;
(7) whether the [institution] is licensed by a state agency responsible for the state's educational system; and,
(8) whether the [institution] is accredited by a nationally recognized accrediting organization.

App'x 91–92; *see Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at *8.

While we agree that these factors can be helpful in identifying an "other educational institution" that may qualify under the bona fide professional exemption applicable to teachers, we do not adopt these factors as a formal test determinative in every case.

## II. **Discussion**

### A. Standard of Review

We review *de novo* both the district court's interpretation of administrative regulations, *see Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012), and its judgment of dismissal under Rule 12(b)(6), accepting plaintiffs' plausible allegations as true and drawing all reasonable inferences in their favor, *see Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015).

### B. The FLSA's Exemption for Bona Fide Professionals, Including Teachers at Educational Establishments

The FLSA generally requires employers to pay "employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2015) (citing 29 U.S.C. §§ 206–207). Because the FLSA is remedial legislation, we construe its exemptions narrowly and place the burden on the employer to show that his establishment is "plainly and unmistakably within the[] terms and spirit" of the exemption. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d at 81 (internal quotation marks omitted).

The statutory exemption at issue here states that the FLSA's minimum wage and overtime requirements "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional

8

capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools)."[4] 29 U.S.C. § 213(a)(1); *see Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 150 & n.4 (2d Cir. 2013). The DOL, which administers the FLSA, *see* 29 U.S.C. § 204, has promulgated regulations pertinent to this exemption, *see* 29 C.F.R. pt. 541. The regulations at issue here, having undergone the notice-and-comment process, *see* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 541), "'have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute,'" *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d at 559 (quoting *Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 82 (2d Cir. 1996)). The parties here make no such challenge to the DOL's regulations. Rather, they dispute only the regulations' meaning. Before addressing that dispute, we make a few observations.

---

[4] In this opinion, we address only so much of the exemption as applies to teachers, who are "professional" rather than "executive" or "administrative" employees. *See* 29 C.F.R. § 541.303(a).

In general, an employer relying on the "bona fide professional" exemption from the FLSA's minimum wage and overtime mandates "must satisfy both a duties requirement and a salary requirement." *Anani v. CVS RX Servs., Inc.*, 730 F.3d at 147. To satisfy the duty requirement, the employer must generally show that the employee's work requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," or "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a)(2). To satisfy the salary requirement, the employer must show that the employee has been "[c]ompensated on a salary basis at a rate of not less than $455 per week." 29 C.F.R. § 541.600(a); *see Anani v. CVS RX Servs., Inc.*, 730 F.3d at 147–48.[5]

These generalized duty and salary requirements, however, do not apply to "teaching professionals." 29 C.F.R. § 541.303(d). Rather, the applicable regulations dispense with the salary requirement entirely, *see id.*, and establish a more specific duty test, identifying a teaching professional as an employee

---

[5] The salary threshold was recently increased to "not less than $913 . . . per week." 29 C.F.R. § 541.600(a) (effective Dec. 1, 2016). That amendment, however, is presently enjoined nationwide. *See Nevada v. U.S. Dep't of Labor*, --- F. Supp. 3d ----, No. 16-cv-00731, 2016 WL 6879615, at *9 (E.D. Tex. Nov. 22, 2016), *appeal docketed*, No. 16-41606 (5th Cir. Dec. 1, 2016).

(1) "with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge," (2) "who is employed and engaged in this activity as a teacher in an educational establishment," *id.* § 541.303(a). Plaintiffs concede that their primary duty while employed by defendants is teaching in order to impart knowledge, specifically, knowledge of the English language. What they dispute is defendants' status as qualifying "educational establishment[s]."

DOL regulations define "educational establishment" as "an elementary or secondary school system, an institution of higher education or other educational institution." *Id.* § 541.204(b).[6] The Zoni Centers are not associated with an elementary or secondary school, or with any institution of higher education. Thus, to qualify for the FLSA exemption applicable to bona fide professionals, they must be "*other* educational institution[s]." *Id.* (emphasis added).

DOL regulations do not specifically define "other educational institution." Instead, they state that (1) the term "includes special schools for mentally or physically disabled or gifted children, regardless of any classification of such schools as elementary, secondary or higher"; (2) "[f]actors relevant in

---

[6] The parties agree that DOL regulations use the terms "other educational institution" and "other educational establishment" interchangeably.

determining whether post-secondary career programs are educational institutions include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools"; and (3) "for purposes of the [teaching professional] exemption, no distinction is drawn between public and private schools, or between those operated for profit and those that are not for profit." *Id.*

    C.    <u>Regulatory Interpretation of "Other Educational Institution"</u>

In this case, we address whether the Zoni Centers constitute such an "other educational institution." In so doing, we look to the plain language of the regulatory text, which we consider "in light of its purpose, as stated in the regulation's preamble . . . as well as the purpose of the regulation's authorizing statute." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 52 (2d Cir. 2016) (citing approvingly to Kevin M. Stack, *Interpreting Regulations*, 111 Mich. L. Rev. 355 (2012)).

    1.    <u>Plain Meaning</u>

The word "educational," as used both in the operative regulations and in DOL opinion letters, appears here to bear its common meaning, *i.e.,* "of, relating to, or concerned with education or the field of education." *Webster's Third New*

*International Dictionary (Unabridged)* 723 (1986 ed.). "Education" is "the act or process of providing with knowledge, skill, competence or us[ually] desirable qualities of behavior or character or of being so provided esp[ecially] by a formal course of study, instruction, or training." *See id.* This comports with § 541.303, captioned "Teachers," which states that the FLSA's bona fide professional exemption applies to "any employee with a primary duty of teaching, tutoring, instructing or lecturing in *the activity of imparting knowledge* . . . ." 29 C.F.R. § 541.303(a) (emphasis added). Whether an institution is "educational" thus turns not upon the subject matter that is learned, but upon whether and how it is provided.

The open-ended nature of this definition is confirmed by the applicable regulation, which does not explain what an "other educational institution" means or is limited to, but only what it "*includes*," 29 C.F.R. § 541.204(b) (emphasis added). Such language indicates that the facilities discussed thereafter—special schools for disabled or gifted children—are merely illustrative, and not exhaustive, as to what might qualify as an "other educational institution." *See Black's Law Dictionary* 831 (9th ed. 2009) (explaining that "participle *including* typically indicates a partial list" (emphasis in original)); *Webster's Third New International Dictionary (Unabridged)* 1143 (defining "include"

as "to place, list, or rate as a part or component of a whole of a larger group, class, or aggregate"). This conclusion is reinforced by § 541.204(b)'s next sentence, which recognizes that "post-secondary career programs"—entities distinct from the aforementioned special schools—can also qualify as educational establishments, particularly if they are state-licensed or nationally accredited.

Applying these plain-language considerations here, the Zoni Centers are "other educational institution[s]." As described in plaintiffs' amended complaint, their primary purpose is to provide English-language instruction to students using prescribed books in a traditional classroom environment. Every lesson plan must include speaking, listening, writing, and reading English, with student progress assessed on midterm and final examinations. These allegations confirm that plaintiffs were engaged in the transmittal of knowledge to students in much the same way as primary and secondary school teachers, except that plaintiffs' students were adults, not children, and the knowledge conveyed to them focused on a single subject, the English language. Further, as discussed by the regulation in the context of career schools, the Zoni Centers have both national educational accreditations and state licensure. Indeed, the latter qualification requires that Zoni Center teachers have completed a program in teaching English as a second language or have at least one year's experience

14

teaching English as a second language, *see* 8 N.Y.C.R.R. § 126.10(j)(3)(iii)(a), further indicating that the teaching of English as a second language in New York is conducted by bona fide professionals.

### 2. Regulatory Purpose

The purpose of the regulation warrants no different conclusion. What scant legislative history there is regarding 29 U.S.C. § 213(a)(1)'s bona fide professional exemption suggests that it was premised on the intention to exempt workers who "typically earned salaries well above the minimum wage, and . . . were presumed to enjoy other compensatory privileges . . . setting them apart from the nonexempt workers entitled to overtime pay." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. at 22,124. Here, plaintiffs' $16-to-$17 hourly pay for their classroom work is well above the federal hourly minimum wage. Even when plaintiffs' earnings are attributed to the total hours worked inside and outside the classroom, no plaintiff's hourly rate of pay declines to less than $10 per hour, still above the federal and state minimum wage during that period. *See* 29 U.S.C. § 206(a)(1)(C) (mandating federal minimum wage of $7.25 as of July

15

2009); N.Y. Lab. Law § 652(1) (raising state minimum wage to $8 per hour effective December 31, 2013, and $8.75 effective December 31, 2014).[7]

Certainly, plaintiffs' total weekly earnings are hardly munificent and much lower than those of a new teacher employed by the New York City Board of Education. *See* United Fed'n of Teachers, Salary Schedules for 2009–2018 Contract 2–5, http://www.uft.org/files/attachments/secure/teacher-schedule-2009-2018.pdf (announcing increases in minimum base salary for New York City teachers to $45,985 as of May 1, 2013, and to $49,908 as of May 1, 2015). Also, because the FLSA is a remedial statute intended "to remedy the evil of overwork," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks omitted), we must limit the application of FLSA exemptions "to those establishments plainly and unmistakably within their terms and spirit," *Chen v. Major League Baseball Props., Inc.*, 798 F.3d at 81 (internal quotation marks omitted). But we need not further address the aptness of a comparison between the wages of plaintiffs and other teachers because DOL regulations—the enforceability of which plaintiffs do not challenge—specifically

---

[7] After plaintiffs filed their amended complaint, the state minimum wage increased to $9 effective December 31, 2015 and $11 effective December 31, 2016. *See* N.Y. Lab. Law § 652(1).

exclude any salary requirement for exempt teaching professionals. *See* 29 C.F.R. § 541.303(d).

As for the regulatory preamble, it too has little to say about application of the bona fide professional exemption to teachers. It highlights the DOL's decision to use state licensure and national accreditation as relevant factors in deciding whether post-secondary career programs qualify for the exemption. *See* 69 Fed. Reg. at 22,147. Otherwise, the preamble simply states, in response to industry commenters, that DOL opinion letters can provide guidance in deciding whether a particular entity constitutes an "other educational institution" for purposes of the FLSA bona fide professional exemption. *See id.; see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 149 (2d Cir. 2008) (observing that this court has "often relied" on such letters "for their persuasive value" as illustrating "a body of experience and informed judgment to which courts and litigants may properly resort for guidance" (internal quotation marks omitted)).

Our review of applicable DOL opinion letters confirms the breadth of subject-matter areas that may be encompassed by an "educational institution." For example, the DOL has concluded that the bona fide professional exemption for teachers applies to instructional programs for automobile, diesel, collision repair, motorcycle, and marine technicians, *see* Opinion Letter from Dep't of

17

Labor, Wage & Hour Div. ("Opinion Letter"), 2006 WL 3406601 (Oct. 26, 2006); to

cosmetology schools, *see* Opinion Letter, 2008 WL 4906284 (Oct. 1, 2008); and to

daycare providers, at least insofar as they provide "grade school curriculums,

introductory programs in kindergarten, or nursery school programs in

elementary education," and not simply childcare, Opinion Letter, 2008 WL

4906283 (Sept. 29, 2008).  While no DOL opinion letters address the status of an

English language instructor at a standalone language instruction facility, we see

no principled ground for differentiating such a facility from those discussed in

the cited opinion letters.

D.     Plaintiffs' Arguments

1.     "Other Educational Institution" Is Not Limited to Schools for
       the Disabled or Gifted, or to Post-Secondary Career Programs

In urging the contrary conclusion, plaintiffs first assert that 29 C.F.R.

§ 541.204(b), by specifically identifying schools for "disabled or gifted children"

and "post-secondary career programs" as "other educational institution[s],"

necessarily excludes other instructional programs from that phrase.  *See NLRB v.*

*SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (explaining "*expressio unius est exclusio*

*alterius*" canon, which suggests that expression of one or several items in

18

enumerated list signals intent to "exclude[] another left unmentioned." (internal quotation marks omitted)). We cannot agree.

As a preliminary matter, "[o]ther educational institution" is the third and final category listed in the definition of an "educational establishment," with the prior two being elementary or secondary school systems and institutions of higher learning. Where such a series of specifically defined disjunctive terms ends with a generalized "other" category, that can indicate that the ultimate term is a "catchall" provision. *See, e.g.*, *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 164 (2d Cir. 2014) (so concluding as to phrase "or other removal of children" in least-restrictive-environment provision of Individuals with Disabilities Education Act); *City of New York v. Permanent Mission of India to the United Nations*, 618 F.3d 172, 183 (2d Cir. 2010) (concluding that "other benefits" term in definition of benefits under Foreign Missions Act not limited by preceding specific terms that were merely "illustrative").

That § 541.204(b) *is* such a catchall provision is evident from its text, which does not state what an "other educational institution" is, or is limited to, but only what the term "*includes*." 29 C.F.R. § 541.204(b) (emphasis added). As we have already observed, the use of that word generally indicates a partial list. *See supra* Part II.C.1. Thus, "[t]he word 'include' . . . generally signals that entities not

specifically enumerated are not excluded."  2A N. Singer & S. Singer, *Sutherland on Statutes and Statutory Construction* § 47:25, at 444 (7th rev. ed. 2014); *see Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 54 (2d Cir. 1988) ("We are reluctant to read the term 'includes' as meaning 'is limited to.'").

The *expressio unius* canon warrants no different conclusion because it requires "identifying a series of two or more terms or things that should be understood *to go hand in hand*, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded."  *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) (emphasis added).  That is not so here because special schools for the disabled or gifted are not so closely related to post-secondary career programs as to admit the necessary inference that all other instructional programs were deliberately excluded from the regulation.

> 2. Neither Certificates Held by Teachers nor Earned by Students Are Necessary for the Zoni Centers To Qualify as "Other Educational Institution[s]" under 29 C.F.R. § 541.204(b)

Plaintiffs argue that, even if the institutions specifically enumerated in § 541.204(b) are not exclusive, defendant Zoni Centers do not qualify as "other educational institution[s]" because their instructors do not possess, and their students do not earn, certificates akin to their primary school, secondary school, or college counterparts.  Specifically, plaintiffs argue that Zoni completion

20

certificates are not required for a career; Zoni teachers need not themselves possess teaching certificates, or even major in a field related to English language instruction; and some Zoni teachers may, in fact, lack the baccalaureate degrees required by state law.

These arguments fail because plaintiffs point to nothing in the statute or its implementing regulations indicating that an "educational establishment" must (1) require instructors to hold teaching certificates or (2) award students certificates necessary for employment or educational opportunities. The need for the latter certificate is belied by DOL's inclusion in a non-exhaustive list of "[e]xempt teachers" persons teaching nursery school, home economics, and vocal or instrumental music—areas where a certificate of course completion would not be a necessary prerequisite for employment or academic advancement. *See* 29 C.F.R. § 541.303(b). Even if facility with English is not a prerequisite for particular jobs, plaintiffs cannot dispute that English fluency is a gateway for many more employment opportunities in the United States. *See, e.g.*, Jennifer Cheeseman Day & Hyon B. Shin, U.S. Census Bureau, *How Does Ability To Speak English Affect Earnings?* 6–8, http://www.census.gov/hhes/socdemo/language/ data/acs/PAA_2005_AbilityandEarnings.pdf (conducting study using 2000 Census data and concluding that greater English-language proficiency correlated

with higher earnings in United States labor market).  As for teacher certification, while "an elementary or secondary [school] teacher's certificate [is] a clear means of identifying the individuals contemplated as being within the scope of the exemption for teaching professionals," § 541.303(c), the same regulation observes that "a teacher's certificate is not generally necessary for employment in institutions of higher education or other educational establishments," and that "a teacher who is not certified may be considered for exemption," *id.*  DOL opinion letters make equally plain that "there is no minimum educational or academic degree requirement for bona fide teaching professionals in educational institutions."  Opinion Letter, 2008 WL 4906281 (Sept. 26, 2008); *see* Opinion Letter, 2008 WL 4906284 (Oct. 1, 2008) ("[U]nlike the learned professional exemption, there is no requirement that exempt teachers possess an advanced degree in a field of science or learning."); *id.* (stating that cosmetology instructors are exempt teachers notwithstanding that they "do not possess teaching certificates").

### 3. Further Discovery Was Not Required

Finally, plaintiffs submit that dismissal was premature insofar as the Zoni Centers and/or certain of its teacher-employees may not be in full compliance with their licensure and accreditation requirements.  We are not persuaded

because that factual question does not bear on the legal issue of whether the Zoni Centers are the type of institution DOL regulations deem "educational."  DOL's regulations speak only of whether the establishment has received licensure or accreditation, not whether it is actually compliant therewith.  *See* 29 C.F.R. § 541.204(b).

### E. Other Factors Bearing on Defendants' Educational Status

In identifying the Zoni Centers here as educational establishments, whose teachers are bona fide professionals exempt from FLSA minimum wage and overtime requirements, we do not conclude that the factors that decide this case are the only ones relevant to determining whether an establishment is "educational" under 29 C.F.R. § 541.204(b), or whether an employee is a "teacher," *see id.* § 541.303(a)–(b).  Specifically, we do not disapprove consideration of any other factors relied on by the district court.  We hold only that consideration of all eight factors identified by the district court is not compelled in every case by the plain language of the relevant regulations. Where, as here, there is no dispute that the plaintiffs are teachers employed by defendants "with a primary duty of teaching" in order to "impart[] knowledge," the pleadings themselves established that plaintiffs "engaged in this activity as . . . teacher[s] in an educational establishment," *id.* § 541.303(a), *i.e.*, an

23

establishment whose primary purpose was to convey knowledge. Other evidence, subject to judicial notice in this case, such as defendants' state licensure and national accreditation, and state requirements for professionals teaching English as a second language, only reinforces that conclusion.

Accordingly, we conclude that because the FLSA bona fide professional exemption applies here, plaintiffs cannot state plausible FLSA claims for minimum wage and overtime payments. We affirm the district court's judgment of dismissal.

## III. <u>Conclusion</u>

To summarize, we conclude as follows:

1. Defendants' language-instruction facilities are "other educational institution[s]" under 29 C.F.R. § 541.204(b) because plaintiffs' complaint demonstrates that their primary purpose is to impart knowledge, specifically, knowledge of the English language.

2. This status is further supported by defendants' possession of state licensure and recognized national accreditation.

3. These conclusions, considered together, plainly establish defendants' entitlement to the FLSA's bona fide professional exemption applicable to teachers, *see* 29 U.S.C. § 213(a)(1); 29 C.F.R.

24

§ 541.303(a), and prevent plaintiffs from pleading plausible minimum wage and overtime claims. Accordingly, the district court correctly dismissed these federal claims with prejudice and related state-law claims without prejudice to refiling in state court.

The challenged district court judgment is, therefore, AFFIRMED.